## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

### CASE NO:

**STEPHANIE RYBARCZYK, on behalf of herself
and all others similarly situated,**

    **Plaintiff,**

**v.**

**LADY JANE'S WINTER PARK FL, LLC
a Foreign Limited Liability Company,
LADY JANE'S ORLANDO - UCF FL, LLC.,
a Foreign Limited Liability Company,
LADY JANE'S ALTAMONTE SPRINGS, FL, LLC
a Foreign Limited Liability Company, LADY JANE'S HAIRCUTS
FOR MEN HOLDING COMPANY, LLC., a Foreign Limited Liability
Company, and CHAD JOHNSON, Individually**

    **Defendants.**

_____/

## COLLECTIVE ACTION COMPLAINT

### I.    SUMMARY

Congress designed the Fair Labor Standards Act of 1938 ("FLSA") to remedy situations "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To achieve this broad remedial purpose, the FLSA establishes minimum wage and overtime requirements for covered employees. 29 U.S.C. §§ 206, 207.

These provisions, coupled with an effective integrated cause of action within the FLSA, prevent employers from pilfering the wages rightfully earned by their employees. *See, Billingsley v. Citi Trends, Inc.*, 13-12561, 2014 WL 1199501 (11th Cir. Mar. 25, 2014).

1.      This case implicates a hair salon for men which goes by the name of "LADY JANE'S HAIRCUTS FOR MEN HOLDING COMPANY, LLC."  The entities implicated are LADY JANE'S WINTER PARK FL, LLC., a Foreign Limited Liability Company, ("LJ Winter Park" or "Defendant"), LADY JANE'S ORLANDO - UCF FL, LLC., a Foreign Limited Liability Company, ("LJ Orlando" or "Defendant"), LADY JANE'S ALTAMONTE SPRINGS, FL, LLC., a Foreign Limited Liability Company ("LJ Altamonte " or "Defendant") (collectively, hereinafter "Lady Jane's")   and CHAD JOHNSON, Individually("CJ" or "Defendant")(Collectively, "Defendants").

2.      Defendants have a longstanding policy of misclassifying their employees as "independent contractors."

3.       Defendants required and/or permitted Plaintiff Stephanie Rybarczyk ("Plaintiff") to work as a "hair stylist" and/or stylists at their hair salons in excess of forty (40) hours per week but refused to compensate them at the applicable minimum wage and overtime rate.  In fact, Defendants refused to compensate Plaintiffs at all for the hours they worked.  Plaintiffs' only compensation was in the form of tips

from salon customers.

4.     Defendants' conduct violates the FLSA, which requires non-exempt employees, such as Plaintiffs, to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a).

5.     Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision as does Defendants' practice of siphoning away those tips to distribute to non-tip eligible employees. *See* 29 U.S.C. §§ 203, 206.

6.     Plaintiff brings a collective action to recover the unpaid wages owed to her and all other similarly situated employees, current and former, of Defendants who worked at Lady Jane's, in Florida at any time during the three-year period before this Complaint was filed up to the present ("Class Members"). These Class Members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

7.     Plaintiff further complains on behalf of herself, and a class of other similarly situated current and former "hairstylist" employees of the Defendants, pursuant to Fed.R.Civ.P.23, that they are entitled to back wages from Defendants for hours/weeks of work for which they did not receive at least the Florida minimum wage, in violation of Article X, Section 24 of the Florida Constitution ("Florida

Minimum Wage Claims").

## II.    SUBJECT MATTER JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

9.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

10.     This Court has the authority to grant declaratory relief pursuant to the FLSA and the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02.

11.     This Court has jurisdiction over the Florida Minimum Wage Claims pursuant to 28 U.S.C. §1367, because the acts and omissions that give rise to Plaintiff's FLSA claims are the same acts and omissions that give rise to Plaintiff's Florida Minimum Wage Claims.

12.     The venue is proper in the Middle District of Florida because the events forming the basis of this suit occurred in this District and Plaintiff worked in this District.

13.     This Court has personal jurisdiction over Defendants because they are Registered with the Florida Department of Corporations to conduct business within Florida, and they continue to conduct business within the State of Florida.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants' conducts substantial business within this District, and because a substantial portion of the events that give rise to the claims pled in this Complaint occurred in this District.

## III.    PARTIES AND PERSONAL JURISDICTION

15.    Plaintiff is an adult resident of Orlando, Florida.

16.    At all times material hereto, Plaintiff was employed by Defendants as a "Hair Stylist" from approximately November 2019 through December 2022, in Defendants' Winter Park, Florida Hair Salon[1].

17.    Plaintiff has executed her Consent to Become Party Plaintiff form. *See* attached as Exhibit A.

18.    The Class Members are all of the Defendants' current and former Hair Stylists (hereinafter, "stylists") who worked at Lady Jane's in Florida at any time during the three years prior to the filing of this Complaint up to the present.

19.    Defendant Lady Jane's Winter Park FL, LLC, is a foreign limited liability company doing business in Winter Park, Florida for the purpose of accumulating monetary Profit. This Defendant may be served through its Registered Agent as follows:  Chad Johnson, 2250 Aloma Avenue, Winter Park, Florida 32792.

---

[1] Plaintiff worked at the Lady Jane's Orlando, Florida location as well as Lady Jane's Altamonte Springs, Fl, location during her employment.

20.    Defendant Lady Jane's Orlando - UCF FL, LLC., is a foreign limited liability company doing business in Orlando, Florida for the purpose of accumulating monetary Profit. This Defendant may be served through its Registered Agent as follows: Chad Johnson, 5250 4th Street N, St. Petersburg, Florida 33703.

21.    Defendant Lady Jane's Altamonte Springs FL LLC., is a foreign limited liability company doing business in Altamonte Springs, Florida for the purpose of accumulating monetary Profit. This Defendant may be served through its Registered Agent as follows: Chad Johnson, 990 North State Rd. 434, Suite 1180 Altamonte Springs, FL 32714.

22.    Defendant Chad Johnson is an individual residing in Florida.  This Defendant may be served with process at his personal residence located at: 3933 Country Club Lane, Fort Lauderdale, Florida 33308.   Additionally, this Court has personal jurisdiction over this Defendant because he is the Officer and Director of Lady Jane's Haircuts for Men Holding Company, LLC.

## IV.    <u>FLSA COVERAGE</u>

23.    In an FLSA case, the following elements must be met. "(1) [plaintiff] is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay [plaintiff] minimum or overtime wages." *Freeman v. Key Largo Volunteer Fire & Rescue Dept.*, *Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012) *cert. denied,* 134 S. Ct. 62, (U.S. 2013).

## EMPLOYMENT RELATIONSHIP

24.     To be 'employed' includes when an employer 'suffer[s] or permit[s] [the employee] to work.'" *Id.* at 942 (citing 29 U.S.C. § 203(g)). "To determine if an individual is an employee, 'we look at the economic reality of all the circumstances' surrounding the activity." *Id.* (citing *Brouwer,* 139 F.3d at 819). "We refer to this test as the 'economic reality' test." *Id.* (citing *Villarreal v. Woodham,* 113 F.3d 202, 205 (11th Cir.1997)). "The touchstone of the economic reality test is the alleged employee's economic dependence on the employer." *Id.*

25.     Defendants had the power to hire and fire Plaintiff. Defendants hold interviews in the salons.

26.     Lady Janes denies having an employer-employee relationship with its hairstylists. Lady Janes employs "independent contractor agreements" to mislead hairstylists about the working conditions at its locations and to justify not paying hairstylists any wages. Once a hairstylist begins at a Lady Janes location the realities of the working relationship between Lady Janes and hairstylists is that of an employer-employee relationship.

27.     Defendants controlled Plaintiff's work schedule. Defendants scheduled Plaintiff and other hairstylists to certain days and shifts. *See* schedule example attached as Exhibit B.

28.     Defendants utilize a central management team to monitor and control

the systems of each location.

29.    Defendants utilize a central management team to monitor and control the finances of each location.

30.    Defendants ensure each location follows common policies, procedures and practices through Directors of Operations.

31.    Upon information and belief, Defendants' Operations Managers are responsible for working with a team of other "corporate employees, to oversee the operations of nationwide salons, according to Lady Jane's systems and procedures."

32.    Upon information and belief, Defendants' Operations Managers supervise Regional Managers and Salon Managers.

33.    Upon information and belief, Defendants manage locations through Salon Managers who supervise the stylists and the sale of services and products.

34.    Upon information and belief, Defendants monitor services charged and whether the tips are "high" compared to others performing the same services and ask local Salon Managers to observe and report back to corporate.

35.    Defendants utilize customized point-of-sale (POS) software.

36.    Lady Janes requires new hairstylists submit a copy of their driver's license, cosmetology or barber license, and e-mail address, and photo before creating a profile.

37.    Defendants monitor each location's scheduling of hairstylists.

38.     Defendants requires hairstylists to sign an Independent Contractor Agreement and to initial a document entitled "What your LJ Contract Means."

39.     Defendants' Agreement states the relationship between Defendants and hairstylists is one in which hair stylists are "contractors."

40.     Defendants' Agreement states that hairstylists are responsible for agreeing to scheduled working hours; making appointments; "conducting and controlling services;" providing their own tools, equipment, and supplies; keeping the "contracted workspace in a clean and sanitary manner;" reporting all taxes resulting from services performed; and maintaining a valid professional license.

41.     Lady Jane's charges clients for each service based on menu of services and a minimum price per service.

42.     Plaintiff and other hairstylists receive money based on a percentage of the final service charge Defendants' clients pay.

43.     Defendants required Plaintiff and other hairstylists to work a certain number of days during any given workweek.

44.     Defendants provided training, if needed, through an orientation program that taught the hair stylists what they needed to know in order to work at Lady Jane's.

45.     Lady Jane's offers a variety of services, including haircuts, shaves, styling, and coloring.

46.    Lady Jane's website informs customers that they can expect the same menu of services during a visit to any Grooming Salon across the United States and offers the same discount and satisfaction guarantee customers nationwide. *See* Defendants' website excerpts attached as Exhibit C.

47.    Lady Jane's customers nationwide may opt for services chosen from a menu of à la carte services.

48.    Lady Jane's locations offer men grooming products.

49.    Defendants present hairstylists with written agreements before they are allowed to work at any of their locations.

50.    Defendants label hairstylists as independent contractors.

51.    Defendants require each hairstylist to pay a daily minimum dollar amount as "rent."

52.    Defendants require each hairstylist to pay a percentage of their service sales as "rent."

53.    Defendants require each hairstylist to pay a percentage of their product sales as "rent."

54.    Defendants require every hairstylist to pay a nominal amount every day into a "product fund."

55.    Defendants do not pay hairstylists any amount as a direct wage.

56.    Defendants did not issue hairstylists W-2s.

57.    Defendants issue hairstylists 1099s.

58.    Defendants have not and are not claiming the hairstylists are subject to 7(i) retail exemption.

59.    Defendants have not and are not claiming hairstylists fall within the executive exemption under the FLSA.

60.    Defendants have not and are not claiming hairstylists fall within the administrative exemption.

61.    Defendants have not and are not claiming hairstylists are classified as "tipped employees" under the Act.

62.    Defendants have not claimed tip credit for hairstylists.

63.    Defendants have written policies and procedures directed to hairstylists.

64.    Defendants have a hairstylist Performance Agreement:

    a)    Agree to arrive to work 15 minutes before the scheduled start time;

    b)    Follow salon policies on call-outs and shift coverage;

    c)    Daily/nightly cleaning obligations;

    d)    Failure to maintain consistent adherence may result in the contract being reviewed and further action will be discussed;

    e)    Refusal to sign the agreement will result in days being cut.

65.     Defendants have progressive discipline policies, including but not limited to: (a) arrival to work late will result in a documented verbal warning; (b) second occurrence will result in being sent home or loss of a day on schedule; and (c ) leaving early requires the hairstylist to have the rest of shift covered by another stylist and must get approval from Salon Manager.

66.     Defendants have hairstylist daily expectations including:

a)      Activating and deactivating themselves;

b)      Knowing agreed upon schedule;

c)      Ensuring contracted shift covered if needed;

d)      Bringing change for clients transactions;

67.     Defendants have customer service expectations including:

a)      Each client be checked into Lady Janes system;

b)      Minimum of 3 stylist to be on cutting floor;

c)      Offering customer additional services;

d)      Provide clients with Defendants' business card with name on it;

68.     Defendants require hairstylists submit requests for days off.

69.     Defendants tell hairstylists the salon must stay staffed to ensure we are taking care of our clients in a timely manner to keep them coming back.

70.     Defendants provide that hairstylists may qualify to leave early on slow

days if they achieve highest average/amount in the following, but not limited to categories: (a) color service;(b) Highest ticket;(c ) highest sales;(d) highest request rate; or (e ) most scalp massages.

71.    On a daily basis Lady Janes requires Stylists to report call offs and what steps were taken for coverage.

72.    Defendants require that display shelves be restocked by Stylists.

73.    Defendants require backbar retail product shelves be cleaned by Stylists.

74.    Defendants establish weekly and monthly performance benchmarks for hairstylists.

75.    Defendants require encouraging "meetings" between hairstylist and Salon Manager.

76.    Defendants require hairstylists to follow "Opening the Salon" Procedures.

77.    Defendants communicated that Key holders, such as Plaintiff were required to arrive at least 15-30 minutes before the doors open to the public to perform the following duties, including but not limited to: (a) unlock door;(b) turn on towel warmers, waxing pot, shaving cream dispensers;(c ) make sure every stylist activates for their shift;(d) fold towels; and (e) count and report petty cash.

78.    At all material times, Defendants have been employers within the

meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

79.    Moreover, the Fair Labor Standards Act ("FLSA") defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee." 29 U.S.C. § 203(d).

80.    The statutory definition of "employer" includes corporate officers, participating shareholders, supervisors, managers, or other employees where those individual exercises some supervisory authority over employees and is responsible in whole or in part for the alleged violation. *See id.; Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993); *Donovan v. Grim Hotel Co.,* 747 F.2d 966, 971-72 (5th Cir. 1984).

81.    Defendant Chad Johnson is the President and CEO of Lady Janes' Haircuts for Men, LLC.

82.    Defendant Chad Johnson is the President and CEO of Lady Jane's Winter Park FL, LLC.

83.    Defendant Chad Johnson is the President and CEO of Lady Jane's Orlando - UCF FL, LLC.

84.    Defendant Chad Johnson is the President and CEO of Lady Jane's Altamonte Springs Fl LLC.

85.    Defendant Chad Johnson is involved in the day-to-day business operation of Lady Jane's.

86.    Defendant Chad Johnson has responsibility for the supervision of the hairstylists at Lady Jane's.

87.    Defendant Chad Johnson is responsible for the compensation or lack thereof paid to stylists at Lady Jane's.

88.    Defendant Chad Johnson has the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the business's checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures.

89.    Additionally, Defendant Chad Johnson was responsible for the day-to-day affairs of the Salons. In particular, he was responsible for determining whether the club complied with the Fair Labor Standards Act.

90.    As such, Defendant Chad Johnson is the employer of the Plaintiff and Class Members within the meaning of 3(d) of the FLSA, and is jointly, severally, and liable for all damages[2].

**ENTERPRISE AND INDIVIDUAL COVERAGE**

91.    "The Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207(a) (1),

---

[2] Lady Jane's and Chad Johnson have been investigated by the Department of Labor numerous times since 2012 regarding the misclassification of its Stylists. The Department of Labor reports state that "the stylists do not meet the criteria as determined by the Supreme Court on what constitutes an "independent contractor" versus as employee. *Lady Jane's Haircuts for Men,* Hillard *Case ID*: 1748031. Yet, Defendants have ignored the Department's findings and have continued to misclassify Stylists. Additionally, several FLSA cases have been filed in Federal Court, some of which have been certified as a class and some compelled to Arbitration.

requires an employer to pay overtime compensation to an hourly worker if the employee can establish individual coverage or enterprise coverage." *Silver v. Dr. Neal Krouse, D.O., P.A.*, 06-60634- CIV, 2007 WL 4098879 \*2 (S.D. Fla. Nov. 16, 2007) (citing *Thorne v. All Restoration Svcs., Inc.,* 448 F.3d 1264, 1265 (11th Cir.2006)). "To qualify for enterprise coverage, Defendants must 'ha[ve] employees engaged in commerce or in the production of goods for commerce, or [ ] ha[ve] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.'" *Id.* (citing 29 U.S.C. § 203(s)(1)(A)(i) and (ii)). "The phase 'engaged in commerce' is interpreted broadly and liberally." *Id.* (citing *Alonso v. Garcia*, 147 Fed. Appx. 815, 816 (11th Cir. 2005)).

92.    At all material times, Defendants have been an enterprise within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(r).

93.    At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because they have had employees engaged in commerce. 29 U.S.C. § 203(s)(1).

94.    Specifically, Defendants' employees handle hair products—that have been moved or produced in interstate commerce to Defendants' clients.

Additionally, Defendants' employees, including Plaintiff, have handled materials that have been moved or produced in interstate commerce, which were used in the course of Defendants' business operations.

95.    Defendants advertise on the internet, own salons in multiple states which they advertise together on their website, process credit cards from out of state patrons, communicate via mail, email, and telephone with their clients outside of the state of Florida, and sell their merchandise across state lines.

96.    Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

97.    At all material times, Plaintiff was an individual employee who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

## **WAGE VIOLATIONS**

98.    Defendants misclassify Plaintiff and all other stylists as independent contractors.

99.    Defendants failed to pay Plaintiff and all other stylist any compensation whatsoever.

## V.    **FACTS**

100.    Plaintiff and Class Members have all been victimized by Defendants' common policy and plan to violate their rights under the FLSA by denying them

minimum wage, proper overtime, and the tips they lawfully earned.

101.    Plaintiff, Stephanie Rybarczak, is a former hairstylist and Keyholder at Defendants' hair salons in Florida.

102.    Plaintiff worked on a regular basis for Defendants.

103.    From approximately November 2019 until approximately December 2022, Plaintiff worked for Defendants.

104.    Therefore, Plaintiff has first-hand personal knowledge of the pay violations at Lady Jane's.

105.    The stylists are compensated from a commission determined by Defendants.

106.    Defendants did not pay the hairstylist's compensation for any hours worked at Lady Jane's.

107.    Defendants illegally classified the stylists as independent contractors. However, at all times, the hair stylists were employees of Defendants as that term is defined by the FLSA, relevant case law, and the Department of Labor investigations.

108.    Defendants hired, fired, and supervised the hairstylists. Defendants also set the schedule for the hairstylists. Defendants controlled the details of the stylists' jobs, including setting the prices to charge customers for services and imposing limitations on how to interact with the salon's customers.

109.    Defendants also controlled the hairstylists' appearances with respect to

their attire and makeup. *See* attached as Exhibit D.

110.   Defendants disciplined the stylists for not following salon and company rules.

111.   Defendants tracked the time and days the stylists worked just as is common for typical employer-employee relationships.

112.   In addition, Defendants instructed the stylists about when, where, and how the stylists were to perform their work.

113.   The following further facts demonstrate the stylists' status as employees:

     a)     Defendants had the sole right to hire and fire the stylists;

     b)     Defendants require stylists to complete an employee application as a prerequisite to their employment;

     c)     Defendants made the decision not to pay overtime;

     d)     Defendants made the decision not to compensate at the FLSA minimum wage rate;

     e)     Defendants controlled the stylists' music;

     g)     The stylists have made no financial investment with Defendants' business;

     h)     The stylists were hired as permanent employees and have worked for Defendants for years;

i)      Defendants supervised the stylists; and

j)      Defendants scheduled stylists and as such had sole control over their opportunity for profit.

114.   Defendants misclassified Plaintiff and Class Members as independent contractors to avoid their obligations to pay them pursuant to the FLSA.

115.   Plaintiff and Class Members are not exempt from the overtime and minimum wage requirements under the FLSA.

116.   Although Plaintiffs and Class Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA-mandated time-and-a-half rate for hours in excess of forty (40) per workweek. In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of the FLSA. *See* 29 U.S.C. § 206.

117.   Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiffs with the intent to avoid paying them in accordance with the FLSA.

118.   Defendants have been in the hair salon industry for years and are familiar with the long line of federal, state, and arbitration cases(as well as several Department of Labor investigations)  holding that stylists in this industry are

employees as that term is defined by the FLSA.

119.   Further, at all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose. *See Brennan v. Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914–15 (9th Cir. 2003).

120.   All Defendants have a common business purpose of for-profit hair salons.

121.   The individually named Defendant keeps employment records for Lady Jane's.

122.   The individually named Defendant has ultimate authority regarding hiring and firing employees at Lady Jane's.

123.   The individually named Defendant created and implemented a companywide policy of misclassifying Stylists as independent contractors at Lady Jane's throughout Florida and at all Salons Nationwide.

## VI.   COUNT ONE: VIOLATION OF 29 U.S.C. § 207

124.   Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

125.   Defendants' practice of failing to pay Plaintiffs and Class Members

time-and-a- half rate for hours in excess of forty (40) per workweek violates the FLSA. 29 U.S.C. § 207.

126.   None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to Defendants or Plaintiffs.

## VII.   COUNT TWO: VIOLATION OF 29 U.S.C. § 206

127.   Plaintiff incorporates all allegations contained in the foregoing paragraphs.

128.   Defendants' practice of failing to pay Plaintiff and Class Members at the required minimum wage rate violates the FLSA. 29 U.S.C. § 206. In fact, Defendants do not compensate the stylists whatsoever for any hours worked.

129.   None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants or Plaintiff.

130.   Defendants failed to keep adequate records of Plaintiff's and Class Members' work hours and pay in violation of section 211(c) of the FLSA. *See* 29 U.S.C. § 211(c).

131.   Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a)      The time of day and day of week on which the employees' work week begins;

b)      The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c)      An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d)      The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e)      The hours worked each workday and total hours worked each workweek;

f)      The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g)      The total premium for overtime hours. This amount excludes the straight- time earnings for overtime hours recorded under this section;

h)      The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i)      The dates, amounts, and nature of the items which make up the total additions and deductions;

j)      The total wages paid each day; and

k)      The date of payment

29 C.F.R. 516.2, 516.5.

132.   Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiff and Class Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiff and Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and producing sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.¸* 328 U.S. 680, 687 (1946).

## VIII.  COUNT THREE: VIOLATION OF ARTICLE X, SECTION 24 OF THE FLORIDA CONSTITUTION

133.   Plaintiffs, and those similarly situated employees, are/were entitled to be paid at least the Florida minimum wage for each hour/week worked during employment with Defendants.

134.   Specifically, Plaintiffs, and those similarly situated employees, were not paid the proper minimum wage, as required by Article X, Section 24 of the Florida Constitution.

135.   Defendants willfully failed to pay Plaintiffs, and those similarly situated employees, minimum wages for one or more weeks during Plaintiffs"

employment contrary to Article X, Section 24 of the Florida Constitution.

136.    Although such prerequisites are unconstitutional, Plaintiffs have complied with all statutory prerequisites to bringing his claim pursuant to Article X, Section 24 of the Florida Constitution.

137.    Specifically, on June 2023, Plaintiff served Defendants with a Notice pursuant to Fla. Stats. § 448.110, on behalf of themselves, and those similarly situated to Plaintiffs. *See* Plaintiff's Notice Letter attached hereto as Exhibit E.

138.    More than 15 days have elapsed since Plaintiff's service of their Notice on Defendants, and Defendants have failed to make payment to Plaintiff.

139.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiffs, and those similarly situated employees, have been damaged in the loss of minimum wages for one or more weeks of work with Defendants.

140.    Plaintiff is entitled to an award of damages in an amount equal to the relevant Florida Minimum Wage, and an equal amount as liquidated damages.

141.    Plaintiff is entitled to an award of reasonable attorneys' fees and costs, pursuant to Article X, Section 24 of the Florida Constitution.

## IX.    COLLECTIVE ACTION ALLEGATIONS

142.    As part of their regular business practices, Defendants have intentionally, willfully and repeatedly harmed Plaintiffs and Class Members by

engaging in a pattern, practice, or policy of violating the FLSA on a class-wide basis, as described above.

143.    Although Defendants permitted and/or required Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty. Defendants have also denied them full compensation at the federally mandated minimum wage rate.

144.    Class Members perform or have performed the same or similar work as Plaintiff.

145.    In particular, Plaintiff and Class Members all worked as Stylists under the same conditions and subject to the same violations of the FLSA.

146.    Many Class Members regularly work or have worked in excess of forty (40) hours during a workweek.

147.    Defendants have classified and continue to classify Class Members as independent contractors.

148.    Class Members are not exempt from receiving overtime pay and/or minimum wage at the federally mandated minimum wage rate under the FLSA.

149.    As such, Class Members are similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

150.    Defendants' failure to pay overtime compensation and hours worked

at the minimum wage rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the Class Members.

151.    The experiences of Plaintiff, with respect to her pay, are typical of the experiences of Class Members.

152.    The experiences of Plaintiff, with respect to her job duties, are typical of the experiences of Class Members.

153.    The specific job titles or precise job responsibilities of each Class Member does not prevent collective treatment.

154.    All Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

155.    All Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

156.    Although the exact amount of damages may vary among Class Members, the damages for Class Members can be easily calculated by a formula. The claims of all Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Class Members.

157.    The Plaintiff and the Class Members held the same job title: Hair Stylists and/or Stylists.

158.    The Defendants have classified all of its Stylists as independent contractors from at least September 2020 to present.

159.    The individually named Defendant instituted, permitted, and/or required the policy and practice of classifying all Stylists at Lady Jane's as independent contractors.

160.    The individually named Defendant instituted, permitted, and/or required the policy and practice of charging all stylists at Lady Jane's fees and costs.

161.    As such, the class of similarly situated Plaintiffs is properly defined as follows:

## X.    CLASS ACTION ALLEGATIONS

162.    Plaintiff sues on her own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

163.    Plaintiff brings her Florida Minimum Wage Claims on behalf of all persons who were employed by Defendants at any time since September 2018, to the entry of judgment in this case (the "Class Period"), who were "Stylist" employees and who have not been paid at least the applicable Florida Minimum Wage for hours/weeks worked, as required, in violation of Article X, Section 24 of

the Florida Constitution (the "Class").

164.    The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are between 100 and 500 members of the Class during the Class Period.

165.    The claims of Plaintiff are typical of the claims of the Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy - particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

166.    The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

167.    Specifically, Defendants illegally misclassified all of their stylists employees, including Plaintiff as independent contractors and failed to pay them minimum wages as mandated by Article X, Section 24 of the Florida Constitution.

168.    Application of this policy or practice does/did not depend on the personal circumstances of Plaintiff or those joining this lawsuit. Rather, the same policy or practice which resulted in the non-payment of minimum wages to Plaintiff

applied and continues to apply to all class members. Accordingly, the class members are properly defined as:

> **All of Defendants' current and former Stylists who worked at Lady Jane's at any time during the five (5) years in Florida before this Complaint was filed up to the present.**

169.    Plaintiff is committed to pursuing this action and has retained competent counsel experienced in employment law and class action litigation.

170.    Plaintiff has the same interests in this matter as all other members of the class and Plaintiff's claims are typical of the Class.

171.    There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a)    whether the Defendants employed the members of the Class within the meaning of Article X, Section 24 of the Florida Constitution;

b)    whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and members of the Class;

c)    what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d)           whether Defendants misclassified their stylists as independent contractors;

e)           whether Defendants failed and/or refused to pay the members of the Class at least the Florida Minimum Wage in one of more workweeks;

f)           whether the Defendants are liable for all damages claimed hereunder, including but not limited to, costs, disbursements and attorney's fees; and

g)           whether the Defendants should be enjoined from such violations of Article X, Section 24 of the Florida Constitution in the future.

## XI.    **DAMAGES SOUGHT**

172.   Plaintiff and Class Members are entitled to recover compensation for the hours they worked for which they were not paid at the federally mandated minimum wage rate.

173.   Additionally, Plaintiff and Class Members are entitled to recover their unpaid overtime compensation.

174.   Plaintiff and Class Members are also entitled to all of the misappropriated funds, including all funds that were charged as fees and penalties,

out-of-pocket expenses and all unlawful deductions that were taken. Without repayment of such fees, Plaintiff and Class Members will not have been paid minimum wage and overtime in accordance with the FLSA.

175.    Plaintiff and Class members are also entitled to an amount equal to all of their unpaid wages and fees as liquidated damages. 29 U.S.C. § 216(b).

176.    Plaintiff and FLSA Class Members are entitled to recover their attorney's fees and costs as required by the FLSA. 29 U.S.C. § 216(b).

177.    Plaintiff and Class Members also seek pre and post judgment interest, and lump sum for increased tax liability related to any award payment.

## **JURY DEMAND**

178.    Plaintiff and Class Members hereby demand trial by jury.

## **PRAYER**

179.    For these reasons, Plaintiff and Class Members respectfully request that judgment be entered in their favor awarding the following relief:

a)    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiff and her counsel to represent the Class;

b)    Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-

In Class, appraising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and their counsel to represent the Collective Action members;

c)      Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour and minimum wage provisions of the FLSA;

d)      Overtime compensation for all hours worked over forty in a workweek at the applicable time-and-a-half rate;

e)      All unpaid wages at the FLSA mandated minimum wage rate;

f)      All unpaid wage at the Florida mandated minimum wage rate;

g)      All misappropriated funds;

h)      All misappropriated funds that were labeled as fees or otherwise;

i)      An equal amount of all owed wages and misappropriated funds and tips as liquidated damages as allowed under the FLSA;

j)      An equal amount of all owed wages and misappropriated funds and tips as liquidated damages as allowed under Article X, Section 24 of the Florida Constitution;

k)      Reasonable attorney's fees, costs and expenses of this action as provided by the FLSA; and

l)      Such other relief to which Plaintiff and Class Members may be

entitled, at law or in equity.

Dated this 20th day of July 2023

Respectfully submitted,

*/s/ Noah E. Storch*
Noah E. Storch, Esq.
Florida Bar No.: 0085476
RICHARD CELLER LEGAL, P.A.
10368 W. State Road 84, Suite 103
Davie, FL 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-mail:
noah@floridaovertimelawyer.com

*Trial Counsel for Plaintiff*